IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

DUSTEN BLAKE WARD                                                                              PETITIONER
ADC #170459

v.                                              4:21-cv-00036-KGB-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction; *et al.*[1]                                          RESPONDENTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. Your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. Failure to file timely objections may result in waiver of the right to appeal questions of fact. Mail your objections to:

Clerk, United States District Court
Eastern District of Arkansas
600 West Capitol Avenue, Suite A149
Little Rock, AR 72201-3325

### DISPOSITION

---

[1] Respondent Leslie Rutledge should be dismissed. Pursuant to Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the respondent should be named as the state officer who has custody of the petitioner. Therefore, Dexter Payne, Director of the Arkansas Division of Correction, is the only necessary and appropriate respondent. *See* Ark. Code Ann. § 12-27-101(a)(1) (establishing the Division of Correction to "assume the custody, control, and management of the state penitentiary" and "provide for the custody, treatment, rehabilitation, and restoration of adult offenders").

I.  **BACKGROUND**

Petitioner Dusten Blake Ward, an inmate at the Pine Bluff Unit of the Arkansas Division of Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus *pro se*.  (Doc. Nos. 2-3.)  Mr. Ward was convicted on June 22, 2018, in the Circuit Court of Benton County, Arkansas, after pleading guilty, as a habitual offender, to second-degree domestic battering, aggravated assault on a family or household member, and aggravated cruelty to a dog, cat, or horse.  (Doc. No. 11-2 at 15-17.)  Mr. Ward simultaneously admitted to violating the terms of his probationary sentence for possession of a controlled substance with purpose to deliver and possession of drug paraphernalia in *State v. Ward*, No. 2013-1205-2 (Benton Cnty. Cir. Ct.), and to violating the terms of his probationary sentence for possession of a controlled substance with purpose to deliver and two counts of possession of drug paraphernalia in *State v. Ward*, No. 2013-1707-2 (Benton Cnty. Cir. Ct.).  (*Id*. at 18-20.)  Pursuant to a negotiated plea agreement, Mr. Ward was sentenced to an aggregate term of twenty-five years' imprisonment, followed by fifteen years' suspended imposition of sentence.  (*Id*. at 7-9, 12-13, 21.)

Mr. Ward did not attempt an appeal or file a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37.  On October 2, 2019, he filed a *pro se* petition for writ of error *coram nobis* in the Benton County Circuit Court.  (*Id*. at 24.)  He asserted his guilty plea had been coerced – specifically, that his trial counsel had colluded with the prosecutor to cause him to accept a sentence in excess of his presumptive sentence.  (*Id*. at 28-31.)  He also averred the prosecution had withheld evidence in the form of a notarized affidavit written by the victim, in which she generally claimed she had not been "completely honest" in her statements to law enforcement about the "fight" that resulted in Mr. Ward choking her, hitting her with a metal pipe, and killing their dog.  (*Id*. at 31-34, 37-40.)  The circuit court denied Mr. Ward's *coram nobis*

petition, finding it represented an untimely Rule 37 petition. (*Id*. at 59-61.) Mr. Ward appealed, raising only the claim of coerced guilty plea. (Doc. No. 11-3 at 6-9.) The Arkansas Supreme Court affirmed, holding Mr. Ward's allegation that his guilty plea had been involuntary as a result of trial counsel's bad advice could be raised only in a Rule 37 petition and would not warrant issuance of the writ of error *coram nobis*. *Ward v. State of Arkansas*, 2020 Ark. 386, 611 S.W.3d 182.

Mr. Ward filed the instant Petition for Writ of Habeas Corpus on January 14, 2021. (Doc. No. 2.) In the Petition and the accompanying Brief in Support, Mr. Ward raises two grounds for relief. First, he continues to argue his guilty plea was coerced, but the basis of this claim has changed; Mr. Ward now asserts his trial counsel and the prosecutor both had access to the victim's affidavit prior to his guilty plea and conspired to obtain his plea by withholding the affidavit from him. (Doc. No. 2 at 5-7, Doc. No. 3-1 at 18-19.) Second, he contends the prosecutor's failure to disclose the existence of the affidavit, which the defense received from the victim herself, constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Doc. No. 2 at 8-12, Doc. No. 3-1 at 16-18.) Respondent argues Mr. Ward's claims are time-barred, procedurally defaulted, and meritless. (Doc. No. 11 at 9-17.) After careful consideration of the Petition and Response, and after holding an evidentiary hearing and reviewing the transcript of that hearing (Doc. No. 21), I recommend relief be denied. Mr. Ward's Petition should be dismissed with prejudice.

## II.  ANALYSIS

### A.  Time Bar

Mr. Ward's Petition is untimely based upon the one-year period of limitation imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Title 28 U.S.C. § 2244(d)(1) and (2) set forth a one-year period of limitation for habeas corpus petitions:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(2).

According to Mr. Ward, the factual predicate of his claims was the victim's affidavit, which he did not become aware of until December 2018. (Doc. No. 2 at 18, Doc. No. 3 at 12.) Even assuming this is true – and ignoring Mr. Ward's testimony at the evidentiary hearing that he was generally aware of the contents of the victim's affidavit because he helped her write it (Doc. No. 21 at 13-16) – the Petition is still untimely. Using December 31, 2018, as the starting point under § 2244(d)(1)(D), the one-year period of limitation would have expired on December 31, 2019. Mr. Ward's Petition, filed January 14, 2021, was submitted more than one year too late.

Mr. Ward's *pro se* petition for writ of error *coram nobis* did not toll the period of limitation under § 2244(d)(2) because it was not "properly filed." Both the circuit court and the Arkansas Supreme Court determined the petition was actually an untimely Rule 37 petition. Mr. Ward's disagreement with that determination is immaterial. An application is "properly filed" when its

4

delivery and acceptance are in compliance with the jurisdiction's applicable laws and rules governing filings. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Walker v. Norris*, 436 F.3d 1026, 1030 (8th Cir. 2006) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005)). This is so regardless of whether the state court "also addressed the merits of the claim, or whether its timeliness ruling was entangled with the merits." *Id*. (citing *Carey v. Saffold*, 536 U.S. 214, 226 (2002)). Here, the Arkansas courts applied Arkansas rules to determine Mr. Ward's *coram nobis* petition was not properly filed; for purposes of statutory tolling, "that is the end of the matter." *Id*. at 1032 (citing *Pace*, 544 U.S. at 414).

Nor does the record reflect any support for equitable tolling. Equitable tolling is only appropriate when a petitioner shows (1) he has been pursuing his rights diligently and (2) some extraordinary circumstance stood in the way of his filing. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Mr. Ward has made neither showing. He claims he had difficulty investigating and corroborating the statements made in the victim's affidavit after he became aware of its existence, and that these efforts delayed the filing of his error *coram nobis* petition. (Doc. No. 2 at 18, Doc. No. 3 at 12-15.) But the question at issue is whether Mr. Ward has shown "reasonable diligence to equitably toll the *federal timing rules* for filing his *federal habeas petition*" – not his error *coram nobis* petition. *Gordon v. Arkansas*, 823 F.3d 1188, 1195 (8th Cir. 2016) (citing *Holland*, 560 U.S. at 650) (emphasis in original). Moreover, the affidavit itself was the factual predicate for Mr. Ward's claims, and any efforts to investigate or corroborate it would not toll the period of limitation.

Finally, to the extent Mr. Ward raises a claim of actual innocence as a gateway to pass through the statute of limitation, this claim fails. The United States Supreme Court has made

clear that tenable actual-innocence gateway pleas are rare: in addition to coming forward with new reliable evidence that was not presented at trial, a petitioner must also "persuade[] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This standard is "demanding" and seldom met. *Id*. (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)). Given Mr. Ward's testimony at the evidentiary hearing that he was aware of the contents of the affidavit because he helped the victim write it (Doc. No. 21 at 13-16), the affidavit does not qualify as new reliable evidence.[2] Even if it did, a jury could have easily convicted Mr. Ward in spite of the victim's partial recantations. By Mr. Ward's own admission, the affidavit merely portrayed the incident as less "horrendous" and "severe" than had been indicated in the victim's original statements. (*Id*. at 8, 14.)

For these reasons, Mr. Ward's Petition is barred by the statute of limitations and should be dismissed.

### B. Procedural Default

Alternatively, the claims raised in Mr. Ward's Petition are procedurally defaulted. Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all available state remedies. *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the

---

[2] Mr. Ward's testimony was corroborated by the victim's own testimony that Mr. Ward directed her to write the affidavit and told her "pretty close" what to put in it (Doc. No. 21 at 35, 42), as well as trial counsel's testimony that he and Mr. Ward discussed the victim's partial recantations multiple times before the guilty plea (*id*. at 63).

6

State")).  The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981).  In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts."  *Murphy*, 652 F.3d at 849.

When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted.  *Id*.  If it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'"  *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).  Additionally, in order to exhaust, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate:  (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the claims will result

in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Here, Mr. Ward raised a version of his claims in his *pro se* petition for writ of error *coram nobis*. However, both the circuit court and the Arkansas Supreme Court declined to hear the claims on their merits, finding they should have been raised in a petition for post-conviction relief pursuant to Rule 37. *Ward*, 2020 Ark. 386, at 5-6, 611 S.W.3d at 185-86. Because a Rule 37 petition would now be untimely and thus futile, there is an "independent and adequate state-law ground" for Mr. Ward's conviction and sentence, and federal habeas review is barred absent an exception.[3] *Armstrong*, 418 F.3d at 926; *see also Murphy*, 652 F.3d at 849 ("A state prisoner procedurally defaults a claim by violating a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court.").

The cause-and-prejudice exception requires a showing of "some objective factor external to the defense" that impeded development of the claim in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Mr. Ward does not identify any such impediment. Moreover, the miscarriage-of-justice exception does not apply for reasons previously stated. Finally, the *Martinez* exception for substantial claims of ineffective assistance of trial counsel, which allows federal habeas review where there was no counsel or ineffective counsel in the initial-review collateral proceeding, is also unavailable. *Martinez v. Ryan*, 566 U.S. 1 (2012); *Sasser v. Hobbs*, 735 F.3d 833, 852-53

---

[3] Additionally, Mr. Ward's appeal of the denial of *coram nobis* relief included only his claim that his trial counsel conspired with the prosecutor to force him to agree to a sentence above the presumptive sentence. The appeal did not encompass the withheld-evidence claim raised in the instant Petition. The failure to appeal this issue triggered procedural default as well. *See Thomas v. Payne*, 960 F.3d 465, 473 (8th Cir. 2020) (citing *Fink v. State*, 280 Ark. 281, 658 S.W.2d 359, 360 (1983) ("Issues not argued on appeal are considered abandoned.")).

(8th Cir. 2013) (*Martinez* applicable in Arkansas cases because Arkansas does not generally afford defendants meaningful review of ineffective-assistance-of-trial-counsel claims on direct appeal). *Martinez* has been held to be inapplicable when a *pro se* collateral-review petition is filed outside of jurisdictional time limits. *See Bell v. Kelley*, 5:17CV00234-SWW-JTR, 2018 WL 3653317, at 6 (E.D. Ark. June 29, 2018) (recommended decision) ("[B]ecause Bell failed to file a timely Rule 37 Petition, *Martinez* does not apply to his ineffective assistance claim."), *report and recommendation adopted* 2018 WL 3650228 (E.D. Ark. Aug. 1, 2018); *see also Jones v. Pa. Bd. of Prob. & Parole*, 492 Fed. Appx. 242, 246-47 (3d Cir. 2012) ("Because the Court spoke only of applying its exception to an 'initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel[,]' we conclude that the *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever."). Thus, even assuming Mr. Ward were raising a substantial claim of ineffective assistance of counsel, his failure to first raise it in a properly filed Rule 37 petition precludes application of *Martinez*. His claims are inexcusably procedurally defaulted.

### C. Merits

Even if Mr. Ward's claims had been properly presented and exhausted in state court and presented in a timely federal habeas petition, they would fail on the merits.

#### 1. Coerced Guilty Plea

"The longstanding test for determining the validity of a guilty plea is 'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's

9

advice was within the range of competence demanded of attorneys in criminal cases. *Id.* (citing *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). Thus, a defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent character of the guilty plea by showing the advice he received from counsel was not within the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).

Under *Strickland*, a claim of ineffective assistance of counsel has two components: (1) that counsel's performance was deficient, resulting in errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment; and (2) that the deficient performance prejudiced the defense, depriving the defendant of a fair trial. 466 U.S. at 687. The deficient-performance component requires that a defendant show counsel's representation fell below an objective standard of reasonableness. *Id.* at 687-88. In the context of guilty pleas, the prejudice component focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Hill*, 474 U.S. at 59. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. *Id.* at 687.

Mr. Ward has not shown his attorney performed deficiently by withholding any evidence from him during the plea process. As previously noted, Mr. Ward testified at the evidentiary hearing that he knew about the victim's affidavit because he asked her to write it and helped her do so. (Doc. No. 21 at 13-16.) The victim herself could not remember when she gave Mr.

Ward's attorney a copy of the affidavit; trial counsel testified he probably saw it for the first time the day of the plea, read it, and gave it back to the victim, which would explain why it did not appear in his file. (*Id*. at 36-37, 61, 68-69.) In any event, according to trial counsel's testimony, nothing in the affidavit was new to him. (*Id*. at 70.) He had met with the victim at least three times leading up to the plea, and she had discussed with him her desire that Mr. Ward not be sent to prison. (*Id*. at 60.) The statements she made in the affidavit were "not significantly different" from what she had already told him. (*Id*. at 70.) Additionally, trial counsel had discussed the victim's partial recantations, and the consequences for the case, with both the prosecutor and Mr. Ward. (*Id*. at 62-63, 66.) In short, there is no indication trial counsel withheld the affidavit from Mr. Ward.

Moreover, in trial counsel's view, introducing the affidavit would have done more harm than good because parts of it were inculpatory. (*Id*. at 61-62.) The victim's assertions that Mr. Ward hit her with a copper pipe, restrained her from behind until she could not breathe and passed out, and beat their dog to death were, in trial counsel's words, particularly "damning." (*Id*., Doc. No. 11-2 at 38-39.) Trial counsel testified a jury could have found Mr. Ward guilty without the victim's testimony, and he was facing an aggregate sentence in excess of ninety years. (Doc. No. 21 at 58, 64.) Mr. Ward acknowledged his attorney had informed him of his total exposure. (*Id*. at 19.) Furthermore, according to trial counsel's testimony, Mr. Ward himself "prompted" the plea that day, after having refused the prosecution's initial offers. (*Id*. at 65.) Given all of this evidence, as well as Mr. Ward's assurances on the record that his plea was voluntary, he had not been threatened, intimidated, or coerced into it, and his attorney had gone over all of the evidence with him (Doc. No. 11-2 at 89), the plea was clearly "a voluntary and intelligent choice among the alternative courses of action" open to Mr. Ward. *Hill*, 474 U.S. at 56.

### 2.     *Brady v. Maryland*

Under *Brady*, the government is required to disclose any evidence that is both "favorable to an accused" and "material either to guilt or to punishment." *United States v. Gonzales*, 90 F.3d 1363, 1368 (8th Cir. 1996) (quoting *Brady*, 373 U.S. at 87). There are several limitations, notably including that the government "need not disclose evidence available to the defense from other sources or evidence already possessed by the defendants." *Id*. (citing *United States v. Jones*, 34 F.3d 596, 600 (8th Cir. 1994), *cert. denied*, 514 U.S. 1067 (1995)). Testimony presented at the evidentiary hearing in this case established that both Mr. Ward and his trial counsel knew about the affidavit prior to the plea.[4] Accordingly, Mr. Ward cannot demonstrate a *Brady* violation.

### III.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. Ward has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

### IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.     Respondent Leslie Rutledge be dismissed.

2.     Mr. Ward's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 2) be

---

[4] Testimony also indicated the prosecutor may not have had the affidavit at all. The victim testified she probably did not provide him a copy (Doc. No. 21 at 46), and the prosecutor testified he knew of the victim's desire that Mr. Ward not be prosecuted because he had met with her several times (*id*. at 87). Mr. Ward acknowledged in his own testimony that he had no proof of the prosecution's possession of the affidavit. (*Id*. at 19-20.)

DISMISSED with prejudice.

3. A certificate of appealability not be issued.

DATED this 22nd day of June 2021.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE